IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLIE CYBULSKI and MARIAN CYBULSKI, ) ) ) Plaintiffs, ) ) v. ) ) NATIONSTAR MORTGAGE LLC, ) a Delaware Limited Liability Company, ) ) Defendant. ) | No. 17-cv-03711 Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises from the refusal by Defendant Nationstar Mortgage LLC ("Nationstar") to allow one spouse to assume responsibility for a mortgage obligation incurred by the other. Marian Cybulski ("Marian") and Leslie Cybulski ("Leslie") (together, "Plaintiffs") allege that they have repeatedly asked Nationstar to add Marian to Leslie's loan documentation but Nationstar refuses to accommodate the request. Additionally, since Plaintiffs retained an attorney, Nationstar has persisted in sending all loan documentation to the attorney despite Plaintiffs' repeated requests for documents to be sent directly to their home address. In their three-count complaint, Plaintiffs claim that Nationstar's actions violate the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and also seek a declaratory judgment as to Marian's right to assume the mortgage. Before the Court is Nationstar's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 8.) As explained below, the motion is granted.

## BACKGROUND

For the purposes of Nationstar's motion to dismiss, this Court accepts as true all well-pleaded facts in the complaint and views them in the light most favorable to Plaintiffs. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

As alleged in the complaint, Leslie obtained title to a property located at 3740 Hawthorne Street in Schiller Park, Illinois by way of a warranty deed. (Mot. to Dismiss, Ex. 1, Warranty Deed at 1, Dkt. No. 9.) On June 27, 2014, Leslie executed a quit-claim deed transferring the property to Trust No. 8002365292 ("Land Trust"). (*Id.*, Ex. 2, Quitclaim Deed at 1.) Both Leslie and Marian are beneficiaries of the Land Trust. (Compl. ¶ 6, Dkt. No. 1.)

In April 2015, Leslie obtained a loan from Interbank Mortgage Company, which was secured by a mortgage from the Land Trust. (*Id.* ¶¶ 7–8.) The mortgage contains a due-on-sale restriction, which provides as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

(*Id.*, Ex. A, Mortgage at 8–9.) Leslie is the only signatory to the mortgage. (*Id.* ¶ 10.) Afterwards, both spouses executed a collateral assignment giving Interbank Mortgage Company a beneficial interest in the Land Trust. (*Id.* ¶ 8.) Later, the mortgage was assigned to Nationstar. (*Id.* ¶ 9.)

Throughout 2015, Plaintiffs tried to get Nationstar to let Marian jointly assume the mortgage with Leslie. (*Id.* ¶ 11.) Eventually, Plaintiffs hired attorney Joseph Selbka to help obtain the mortgage assumption. (*Id.* ¶ 12.) Selbka sent several letters to Nationstar regarding the mortgage. In the first, sent on October 21, 2015, Selbka states that the law requires Nationstar

"to place Marian on all mortgage statements and allow him to assume the mortgage responsibilities." (*Id.*, Ex. C. at 1.) Selbka further asserts that Marian has already "assumed the obligations of the mortgage along with Leslie," and therefore the spouses demand that "both parties be placed on all correspondence and billing statements." (*Id.* at 2.) Five days later, Nationstar responded to Selbka's letter by acknowledging the request and promising to answer the inquiry fully. (*Id.* at 3.) On July 12, 2016, Selbka sent another letter (almost identical to the first), again demanding that Marian be placed on all correspondence and billing statements. (*Id.*, Ex. D.) Nationstar again responded by acknowledging receipt of Selbka's correspondence and promising to respond fully to his inquiry. (*Id.*, Ex. E.)

A couple of months later, on September 16, 2016, Nationstar responded to the substance of Selbka's July 12, 2016 letter. Nationstar explained to Selbka that Marian's name had not been placed on the mortgage statements because the loan "is not assumable." (*Id.*, Ex. H at 14 of 17.) Nationstar also explained that "Marian did not sign the Promissory Note which is the actual binding legal document with the promise to pay back the loan." (*Id.* at 15 of 17.) Nationstar did, however, offer to add Marian to the loan as a third party.[1] (*Id.*) Finally, Nationstar noted that it had updated Leslie's account to reflect legal representation, with the mailing address changed accordingly. (*Id.* at 14 of 17.)

Unsatisfied with this response, Selbka sent a third letter to Nationstar on November 30, 2016, again demanding that Marian be added to all loan documentation. Selbka also informed Nationstar of an error that it made in sending out the mortgage payment coupons. (*Id.*, Ex. F. at 1.) The error entailed Nationstar using an incorrect address consisting of several lines from Selbka's address combined with a few lines from Plaintiffs' home address. Selbka asked

---

[1] It is unclear from the briefing what the parties believe would be the legal effect of adding Marian to the mortgage as a third party.

Nationstar to revert immediately to sending the payment coupons to Plaintiffs' home address at 3740 Hawthorne Street. (*Id*.) Loan documents were sent to the incorrect address from October 2016 to December 2016. (*Id.* ¶ 18.) After being notified of the error, Nationstar started to send documents directly to Selbka. (*Id.* ¶ 14.) Selbka then sent his fourth and final letter to Nationstar on January 26, 2017. In that letter, Selbka again requested that Marian be added to all loan documents, but he also demanded that Nationstar stop sending Plaintiffs' loan documents to his office and instead send them to Plaintiffs' home address. (*Id.*, Ex. G.)

On January 31, 2017, Nationstar responded to Selbka's November 30, 2016 letter. (*Id.* at 2 of 17.) With respect to the mailing-address issue, Nationstar explained that as long as Selbka represented Plaintiffs, Nationstar would be "unable to discuss the account with the borrower, or the unauthorized third party directly." (*Id.* Ex. H at 2 of 17.) Consequently, according to Nationstar, it had to send all loan documents, including coupons and escrow checks, to Selbka. (*Id.* at 2–3 of 17.) Nationstar further denied that the monthly mortgage loan statements were sent to the wrong address, instead claiming that it sent the statements to Selbka's address as listed on his last correspondence. (*Id.*)

Ultimately, unable to convince Nationstar to add Marian to the loan documents or send the loan documents directly to their home address, Plaintiffs filed the instant three-count complaint in this Court. In their complaint, Plaintiffs claim that Nationstar violated both RESPA and TILA, and that Plaintiffs have a right to declaratory relief as to Marian's right to assume the mortgage. Nationstar has moved to dismiss the complaint in its entirety.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*

4

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facts that are "merely consistent with" a defendant's liability and conclusory statements are, by themselves, insufficient. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Instead, a claim can be considered plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

      I.      **Assumption of the Mortgage**

This dispute began with Plaintiffs' attempts to have Marian added to Leslie's loan documents, and so the Court will begin its analysis there as well. Plaintiffs seek a declaratory judgment establishing that the mortgage "is freely assumable by Leslie and Marian jointly" and requiring Nationstar to treat Leslie and Marian as joint mortgagors for all purposes. (Compl. at 7, Dkt. No. 1.)

Under Illinois law, the purchaser of a mortgaged property can assume the mortgage obligations either explicitly or implicitly. *See Shiel v. Chicago Title & Tr. Co.*, Gen. No. 8,240, 1931 WL 3088, at *2 (Ill. App. Ct. 1931) ("The rule is firmly established that a purchaser of mortgaged property may be held personally liable for the payment of a note secured by a mortgage provided he had expressly or impliedly agreed to assume and pay the debt."). If the purchaser assumes the mortgage, the purchaser becomes the principal debtor and the original mortgagor becomes his surety. *Seeman v. Mills*, Gen. No. 21,664, 1916 WL 1808, at *1 (Ill. App. Ct. 1916). This assumption agreement between the seller and the purchaser of the mortgaged property does not, on its own, affect the mortgagee, who may elect to bring an action against the original debtor or the new purchaser if the mortgage obligation is not satisfied. *Id.*

Mortgage assumption generally is tied to the sale or transfer of property. *See, e.g., Prudential Ins. Co. of Am. v. Bass*, 191 N.E. 284, 285 (Ill. 1934) ("When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for payment of the debt but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage.") (quotation marks omitted). In other words, assumption occurs when the original mortgagor desires to unload both his property and his mortgage obligation to one buyer. Plaintiffs have cited no authority indicating that assumption applies outside of the sale or transfer of property, and here, there was no sale or transfer of property. Instead, Plaintiffs want the Court either to add Marian to the existing contract between Leslie and Nationstar or to require Nationstar to add Marian's name to all loan documents. But a party cannot unilaterally modify a contract. *See Robinson v. Ada S. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 363 (7th Cir. 1994). And Plaintiffs have provided no authority stating that a court may order a mortgagee to add a third party to mortgage statements. Because the Court does not appear to have any authority to grant the relief requested by Plaintiffs, this claim must be dismissed.

The Court notes that in discussing the assumption issue, both parties focused on the due-on-sale provision contained in the mortgage. Due-on-sale clauses are restraints on alienation that allow the lender to protect its security interest. *Provident Fed. Sav. & Loan Ass'n v. Realty Ctr., Ltd.*, 454 N.E.2d 249, 251 (Ill. 1983). Under the due-on-sale clause between Leslie and Nationstar, if the property was **sold or transferred** without Nationstar's permission, Nationstar could immediately demand full payment of the outstanding loan balance. This clause does not appear to be relevant here, as there was no sale or transfer of the property.

6

## II. Compliance with RESPA

In addition to their request for declaratory relief, Plaintiffs also seek to recover funds that they claim were wrongly held in escrow in violation of RESPA. Specifically, Plaintiffs allege that Nationstar violated 12 C.F.R. § 1024.17 of RESPA's implementing regulations by failing to return $402.11 in excess escrow funds to the correct address. Although there is limited case law discussing the application of 12 C.F.R. § 1024.17, it does not appear from the legislative history that Congress intended to create a private right of action for enforcement of this regulation.

Congress enacted RESPA "to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the [mortgage loan] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601. Plaintiffs' complaint purports to assert a claim under 12 C.F.R. § 1024.17 ("Regulation X"), a RESPA implementing regulation, which states, in pertinent part:

> If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50).

12 C.F.R. § 1024.17(f)(2)(i).

The Consumer Finance Protection Bureau ("CFPB") promulgated 12 C.F.R. § 1024.17 to interpret and carry out a number of RESPA provisions. *See* 12 U.S.C. §§ 2603–2605, 2607, 2609, 2617, 5512, 5532, 5581. The CFPB became responsible for the administration, enforcement, and implementation of RESPA following passage of the Dodd-Frank Act in 2014. However, before implementation of the Dodd-Frank Act, the Department of Housing and Urban Development ("HUD") was responsible for the administration, enforcement, and implementation of RESPA. *See McCray v. Bank of Am., Corp.*, No.14-cv-2446, 2017 WL 1315509, at *14 (D. Md. Apr. 10, 2017) ("Under the Dodd-Frank Act, responsibility for the administration,

7

enforcement, and implementation of RESPA was transferred from the Department of Housing and Urban Development ('HUD') to the CFPB."). During that pre-2014 period, HUD implemented regulations interpreting RESPA, and when CFPB took over, they "substantially duplicate[d]" HUD's regulations. *See id.* (alteration in original); Real Estate Settlement Procedures Act (Regulation X), 76 FR 78978-01 (noting that the CFPB "substantially duplicate[d] HUD's" regulations with respect to RESPA). The surplus instruction in 12 C.F.R. § 1024.17 is nearly identical to the pre-Dodd-Frank Act surplus instruction enacted by HUD. *See* 24 C.F.R. § 3500.17(f)(ii)(2) ("If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50).").

Notably, there was no private right of action to enforce violations of 24 C.F.R. § 3500.17. This is because 24 C.F.R. § 3500.17 was promulgated under 12 U.S.C. § 2609, which is part of Section 10 of RESPA, and Congress did not intend to create a private right of action under Section 10. *See Allison v. Liberty Sav.*, 695 F.2d 1086, 1087 (7th Cir. 1982) ("[W]e hold that there is no private right of action under § 10 of RESPA."); *Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1358 (11th Cir. 2006) (finding that a failure to comply with 24 C.F.R. § 3500.17 is a violation of RESPA Section 10, and violations of Section 10 are only enforceable by the HUD Secretary); *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1304 (5th Cir. 1995) ("Congress did not intend to create a private right of action under Section 10 of RESPA."); *cf. Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 925 (6th Cir. 1980) (holding that Congress intended to create a private remedy for violations of 12 U.S.C. § 2609). Although Section 10 does not provide for a private cause of action, it does outline various penalties the HUD Secretary can impose on servicers. *See* 12 U.S.C. § 2609(d)(1). But because there was no private right of action

8

to enforce 24 C.F.R. § 3500.17(f)(2)(i), there is also no private right of action to enforce the recodified version of the same regulation, 12 C.F.R. § 1024.17(f)(2)(i). *See McCray*, 2017 WL 1315509, at *15 (holding that because there was no private right of action to enforce violations of 24 C.F.R. § 3500.17(k)(1), there is no private right of action to enforce violations of 12 C.F.R. § 1024.18(k)(1)).

In their response to the motion to dismiss, Plaintiffs contend that while parts of 24 C.F.R. § 1024.17 are promulgated pursuant to Section 2609 of RESPA, other parts are promulgated pursuant to Section 2605. According to Plaintiffs, Nationstar violated Section 2605 by failing to properly service the loan. Section 2605 requires loan servicers to respond promptly to borrowers' requests for "information relating to the servicing of a loan." 12 U.S.C. § 2605(e). Notably, "[b]orrowers have a private right of action for any violation of Section 2605." *Chancellor v. Bank of Am. N.A.*, No. 14-cv-7712, 2015 WL 5730103, at *5 (N.D. Ill. Sept. 29, 2015). To the extent Plaintiffs are attempting to assert a claim under Section 2605, Navistar argues that it should be dismissed because it is not clearly stated anywhere in the complaint.

In stating a claim, however, a plaintiff is not required to accurately plead a legal theory, or even plead a legal theory at all. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1991). Instead, at the motion to dismiss stage, all the complaint need contain are factual allegations that give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 255 U.S. 41, 47 (1957)). On its face, Plaintiffs' complaint does not give notice of the fact that they are pursuing a violation of Section 2605's servicing requirements. Indeed, Plaintiffs do not make any allegations regarding deficient servicing and plainly focus on Nationstar's violation of the escrow surplus regulations. After failing to state a claim for deficient servicing in their complaint, Plaintiffs cannot amend

9

their pleadings by adding the claim in a response brief. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Even if Plaintiffs had alleged a violation of Section 2605 in their complaint, it is not clear that such a claim would survive a motion to dismiss. If a mortgage lender receives a written request from a borrower for information relating to the servicing of his or her loan, Section 2605 requires the lender to acknowledge receipt of the letter within five days and substantively respond to the inquiry within 30 days. 12 U.S.C. § 2605(e). In the substantive written response to the borrower's inquiry, the lender must either: (1) make appropriate corrections to the account of the borrower; or (2) conduct an investigation and provide the borrower with a written explanation that either states the reasons why the lender believes the account is correct or explains why the information requested is unavailable. *Id.* § 2605(e)(2). If a lender fails to comply with Section 2605, the borrower may bring an action to reclaim "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f).

Here, Plaintiffs allege that even though they repeatedly informed Nationstar that their escrow check was being sent to the wrong address, Nationstar never corrected the address in the account and never sent the escrow payment to the correct address. Notably, Plaintiffs do not allege any actual damages. Indeed, it is unclear from the complaint whether Plaintiffs ultimately received their escrow check or are still awaiting this payment. Further, Plaintiffs do not allege, nor does anything in the complaint indicate, "a pattern or practice of noncompliance." *Id.* § 2605(f). To state a claim for statutory damages based on a pattern or practice, some courts require allegations sufficient to show that the defendant's RESPA violations are a "standard or

routine way of operating," while some courts require allegations of violations to other borrowers. *Golbeck v. Johnson Blumberg & Assocs., LLC*, No. 16-cv-6788, 2017 WL 3070868, at *12 (N.D. Ill. July 19, 2017) (compiling cases) (quoting *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002)). The complaint here, however, does not contain *any* allegations sufficient to support a pattern or practice claim. Without any claim for actual or statutory damages, Plaintiffs' RESPA claim would fail.

In addition to the damages issue, there is another fundamental problem with Plaintiffs' purported Section 2605 claim. Plaintiffs contend that Nationstar violated Section 2605 by not changing the address to which the loan documents were sent—Plaintiffs wanted their loan documents sent to their home address but Nationstar insisted on sending all documentation to their attorney. But refusing to change the address on Leslie's account is not a violation of Section 2605. Instead, Section 2605 gives lenders the option either to correct the account according to the borrower's request *or* investigate the request and explain why the account has not been corrected. Here, Nationstar responded to Selbka's inquiries regarding the change of address by investigating the request and sending a response confirming that the account was appropriately handled—in other words, that it was appropriate for Nationstar to send its correspondence to Selbka instead of Leslie. Thus, based on the facts currently pleaded, Plaintiffs have not alleged a violation of Section 2605 of RESPA.

### III. Compliance with TILA

Finally, Plaintiffs allege that Nationstar violated TILA by sending payment coupons and statements to the wrong address—first, a "fictitious"[2] address and, second, their attorney's address. TILA requires a mortgage servicer to provide the borrower with a periodic statement for

---

[2] Plaintiffs use the term "fictitious" to describe a mistaken address rather than a fictional address, *e.g.,* Wayne Manor, Gotham City.

11

each billing cycle. 12 C.F.R. § 1026.41(a)(2). These statements must be made "clearly and conspicuously in writing, or electronically if the consumer agrees, and in a form that the consumer may keep." *Id.* § 1026.41(c). The periodic statement must include: (1) the amount due; (2) an explanation of the amount due; (3) a breakdown of all past payments received; (4) a list of all transaction activity that occurred since the last statement; (5) partial payment information; (6) contact information; (7) account information; and (8) delinquency information. *Id.* § 1026.41(d).

The Court first notes that TILA does not require that mortgage servicers send a coupon for payment. Therefore, to the extent Plaintiffs' TILA claim is based on Nationstar's failure to send payment coupons, it is dismissed for failure to state a claim. Furthermore, Plaintiffs have made no argument and presented no authority indicating that Congress intended for servicers to be strictly liable for a failure to comply with TILA. More specifically, Plaintiffs have not cited any authority indicating that Nationstar can be held strictly liable for accidentally sending the periodic statements to the wrong address from October 2016 to December 2016. As for Plaintiffs' claim that Nationstar violated TILA by sending the periodic statements to their lawyer, there is no basis upon which this Court can find that it is inappropriate for a servicer to send statements to the borrower's lawyer, especially when the lawyer is representing the borrower in a lawsuit involving the mortgage at issue.[3] Consequently, the TILA claim is dismissed as well.

---

[3] In its motion, Nationstar argues that the TILA claim should be dismissed because it sent payment coupons directly to Plaintiffs' counsel as required by Rule 4.2 of the Rules of Professional Responsibility. But TILA does not contain any direction regarding where correspondence should be sent—as long as it is sent to Plaintiffs.

## CONCLUSION

For the foregoing reasons, Nationstar's motion to dismiss is granted. Plaintiffs complaint is dismissed without prejudice. Plaintiffs are granted leave to file an amended complaint that attempts to state a valid claim consistent with this Memorandum Opinion and Order within 21 days.

Dated: August 30, 2018

Andrea R. Wood
United States District Judge